## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV 22-1073-GW-DFMx | Date | December 18, 2023 |
|---|---|---|---|
| Title | *Mitsubishi Electronic Corporation, et al. v. TCL Communication Technology Holdings Limited, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** IN CHAMBERS - TENTATIVE RULING ON DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' FINAL INFRINGEMENT CONTENTIONS [95]

Attached is the Court's Tentative Ruling on Defendants' Motion [95] set for hearing on December 18, 2023 at 8:30 a.m.

:

Initials of Preparer    JG

<u>*Mitsubishi Electric Corporation, et al. v. TCL Communication Technology Holdings Limited,*</u>
<u>*et al.*</u>, Case No. 8:22-cv-01073-GW-(DFMx);  Tentative Ruling on Motion to Strike Plaintiffs' Final Infringement Contentions

## I. Background

Plaintiffs Mitsubishi Electric Corporation and Sisvel International S.A. ("MELCO" or "Plaintiffs") brought this action against TCL Communication Technology Holdings Limited, TCT Mobile International Limited, TCT Mobile, Inc., TCT Mobile (US) Inc., and TCT Mobile (US) Holdings Inc. ("TCL" or "Defendants"), alleging infringement of U.S. Patent Nos. 9,635,656 (the "'656 Patent"); 9,713,068 (the "'068 Patent"); and 10,200,976 (the "'976 Patent) (collectively, the "Asserted Patents").  *See generally*, Complaint, Docket No. 1.  The Asserted Patents relate to technology for cellular communications networks, including the LTE (Long Term Evolution) wireless communication network.  *See id*. at ¶ 22.  Plaintiffs allege that the Asserted Patents are essential under the LTE standards.  *See id*. at ¶¶ 36, 43, 50.  As Defendants make, use, and sell mobile devices and data terminals that are compliant with and capable of communicating over LTE networks, Plaintiffs claim Defendants necessarily infringe the Asserted Patents.  *See id.* at ¶¶ 18, 36, 43, 50.

On December 16, 2022, Plaintiffs served their Initial Infringement Contentions on Defendants in accordance with the Honorable Andrew J. Guilford's Standing Patent Rules ("S.P.R."), which the parties agreed upon.  *See* Defendants' Notice of Motion and Memorandum in Support of Its Motion to Strike Plaintiffs' Final Infringement Contentions ("Mot."), Docket No. 95; *see also* Docket No. 42.  Following disagreement between the parties regarding claim construction, the Court held a hearing and issued a final ruling on claim construction on June 22, 2023.  *See* Docket Nos. 75-76.  On August 25, 2023, Plaintiffs served their Final Infringement Contentions on Defendants, with a revised version compliant with the S.P.R. served on September 11, 2023.  *See* Mot. at 2-3.  Plaintiffs stated there was good cause for their amendments to their infringement contentions because:  "TCL introduced 5G-compliant mobile devices, such as the TCL 40 series of phones, within the United States in or around May 2023.  These devices, and the corresponding theories of infringement based on the 5G wireless standard, were not known to Plaintiffs prior to February 2023 and were therefore not included in Plaintiffs' Dec. 16, 2022 Preliminary Infringement Contentions."  *Id*. at 3.

Now before the Court is Plaintiffs' motion to strike amended portions of Defendants' Final

1

Infringement Contentions relating to a 5G infringement theory and 5G products. *See generally* Mot. Plaintiffs filed an opposition, *see* Plaintiffs' Opposition to Motion to Strike Final Infringement Contentions ("Opp."), Docket No. 98, and Defendants filed a reply, *see* Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion to Strike Plaintiffs' Final Infringement Contentions ("Reply"), Docket No. 99.

## II.  Legal Standard

S.P.R. 4.1 provides that "[n]o later than 28 days after the Court construes the claims, the party claiming patent infringement shall serve the information described as follows in S.P.R. 4.1.1 and 4.1.2." S.P.R. 4.1. S.P.R. 4.1.2 states that "[a] party serving Final Infringement Contentions that amend its prior contentions shall also provide a redline against its prior contentions and a statement of reasons for each amendment. Amendments are subject to a good cause standard but do not require prior Court approval where they are made due to a claim construction by the Court different from that proposed by the party seeking amendment, or recent discovery of nonpublic information about the Accused Instrumentality that was not discovered, despite diligent efforts, before the service of the Infringement Contentions." S.P.R. 4.1.2.

"If a party receiving Final Infringement Contentions believes that amendments were made without good cause, it may move the Court to strike them." S.P.R. 4.1. A party seeking to amend their infringement contentions bears the burden of showing good cause, which "requires a showing of diligence." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006).

## III.  Discussion

Defendants claim that Plaintiffs cannot make the requisite showing of good cause for their amendments to their Final Infringement Contentions relating to a new 5G infringement theory and TCL 5G products. *See* Mot. at 1. Defendants argue that Plaintiffs have not show the amendments were required due to the Court's claim construction, and cannot show that the amendments were due to non-public information discovered after the Initial Infringement Contentions because the 3GPP 5G standards and the fact TCL sold 5G products were information publicly availably prior to the Initial Infringement Contentions. *See id*. at 1-2. Further, Defendants contend they will be unduly prejudiced if the motion is denied as they would be deprived of sufficient time to address and respond to these new contentions. *See id*. at 2. Plaintiffs respond by asserting they have diligently continued their investigation into the scope of the accused instrumentalities relating to

their infringement theories. *See* Opp. at 4. Based on this investigation and consultation with their expert, Plaintiffs claim they only recently (i) identified that TCL 5G phones infringe the Asserted Patents because they are backwards compatible with the 4G/LTE standard, and (ii) the TCL 5G devices separately infringe the Asserted Patents through their compatibility with the 5G wireless standard, whose provisions are substantially similar to the 4G/LTE standard. *See id*. Plaintiffs claim that any delay in their discovery of these additional theories is due to Defendants' deficient discovery disclosures. *See id*. at 2-4. Further, Plaintiffs argue that these 5G theories are not new theories of infringement and Defendants have not suffered any prejudice (especially as Plaintiffs blame Defendants for the delay). *See id*. at 7-10.

The Court would agree with Defendants. The relevant portion of S.P.R. 4.1.2 defines good cause as when there is a "recent discovery of *nonpublic information* about the Accused Instrumentality that was not discovered, *despite diligent efforts*, before the service of Infringement Contentions." S.P.R. 4.1.2 (emphasis added). Plaintiffs' arguments are unavailing because there was publicly available information prior to Plaintiffs serving their Initial Infringement Contentions that TCL sold 5G devices that were 4G/LTE compatible and that the 5G standards may be substantially similar to the 4G/LTE standards. Plaintiffs do not appear to dispute that TCL sold 5G 10 and 20 phones prior to their serving of the Initial Infringement Contentions, and that information was publicly available. Further, the possibility that these 5G phones may be backwards compatible with the 4G/LTE network also was publicly available information. *See* Docket No. 95-10, Ex. H (GSMArena website listing the network specs of the TCL 10 5G UW as "GSM / HSPA / LTE / 5G"). *See also* Sean Cameron, *TCL 10 5G review*, TechRadar (Sept. 3, 2020), https://www.techradar.com/reviews/tcl-10-5g-review ("TCL is betting big with the 10 5G that the capability to reach 5G speeds alone will be enough to sell handsets, indeed, a clue to this confidence is in the name of the handset. Fittingly, with no 5G coverage in our area, or access to a capable SIM, we were unable to test performance in this area. Coverage on 4G networks was suitably strong, however."); Myriam Joire, *TCL 10 5G UW Review: mmWave 5G on a Budget*, GeekSpin (Oct. 29, 2020), https://geekspin.co/tcl-10-5g-uw-review/ ("I spent most of my time using this phone on Verizon's 4G LTE network, but I expect sub-6GHz 5G battery life to be similar (based on my experience with AT&T and T-Mobile's sub-6GHz 5G)."); Eric Zeman, *The TCL 10 Series redefines affordable flagships (Update: North America date)*, Android Authority (May 15, 2020), https://www.androidauthority.com/tcl-10-pro-5g-10l-1102627/ (listing wireless specs of 10

5G phone including "Sub-6GHz 5G (Bands n1, n3, n8, n28, n77, n78)" and "LTE 4G").[1] Thus, with diligent effort, Plaintiffs should have been aware prior to their serving of Initial Infringement Contentions that TLC sold 5G phones and that those 5G phones were reportedly compatible with 4G/LTE networks.

Plaintiffs' attempt to place the blame with Defendants by claiming that "if not for Defendants' unilaterally restricting the scope of discovery they provided," they "would have been aware of TCL's 5G devices." Opp. at 9. Plaintiffs' argument is unpersuasive. Regardless of whether Defendants improperly narrowed the definition of Accused Instrumentalities to not include 5G phones they sold that were capable of connection with 4G/LTE networks, the crucial information Plaintiffs desire was at all times publicly available. The public availability of that information is obvious as Plaintiffs are now aware that Defendants sell 5G phones compatible with 4G/LTE networks despite Defendants not supplementing their discovery responses. To meet their standard for good cause, Plaintiffs would need to supply an explanation as to how the publicly available information regarding TCL selling 5G phones that were compatible with 4G/LTE networks was not discovered despite their diligent efforts and investigation. Plaintiffs have not made such a showing. Plaintiffs' attempt to narrow the scope of their accused instrumentalities to only the TCL 30 5G and 40 5G phones, which were not made available until May 2023, is unconvincing. TCL's selling of 5G phones compatible with 4G/LTE was publicly available information prior to December 2022, and attempting to confine accusations to more recent models cannot overcome that fact. Plaintiffs cannot carry their burden to show good cause as to the addition of TCL 5G products.

For similar reasons, Plaintiffs also cannot show good cause as to their theory that the 5G wireless standards are substantially similar to the 4G/LTE wireless standards. The 3GPP 5G wireless standards were publicly available and fully specified by September 2019. *See* Mot. at 5; Docket No. 95-9, Ex. G. Plaintiffs do not appear to dispute this fact. If Plaintiffs wanted to assert that "the same features in the 5G standard [] infring[e] the Asserted Patents as the features in the 4G/LTE standard," that argument could have been made in Plaintiffs' Initial Infringement

---

[1] The Court on its own takes judicial notice of these articles only for the purpose of showing that there were publicly available reports of individuals using TCL 5G phones with compatibility to the 4G/LTE networks. These publicly available articles could have been found by Plaintiffs with diligent efforts that would have put them on notice to investigate such claims. The Court does not make any finding related to whether any TCL 5G phones are in fact backwards compatible with the 4G/LTE networks.

4

Contentions based on publicly available information. Opp. at 8. Plaintiffs offer no contrary explanation. Further, Plaintiffs' denial that this is a new theory is weak. While Plaintiff may be claiming that the infringement of the Asserted Patents by 5G technology is similar to infringement by 4G technology, Plaintiffs are alleging that infringement comes from a completely different wireless standard. If Plaintiffs claim was convincing, Plaintiffs could and should have charted the accused products to the 5G standards in their Initial Infringement Contentions.

In sum, because all of the information necessary for Plaintiffs to file their Final Infringement Contentions was publicly available and accessible with diligent effort prior to their serving of their Initial Infringement Contentions, Plaintiffs have not shown good cause under S.P.R. 4.1.2 for their 5G-related amendments. As the Court would not find that Plaintiffs have met their burden to establish good cause, the Court need not consider whether Defendants would be unduly prejudiced by the Final Infringement Contentions.[2]

## IV. Conclusion

Based on the foregoing discussion, the Court would **GRANT** Defendants' motion to strike Plaintiffs' Final Infringement Contentions.

---

[2] While the Court need not reach the issue, it appears that allowing Plaintiffs' Final Infringement Contentions to stand could unfairly affect Defendants given the close of fact discovery was December 13, 2023. This would seemingly not allow sufficient time to respond to the new contentions and produce updated expert opinions within the relevant timeframe.